---

### In re GOODMAN.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

ATTORNEY AND CLIENT (§ 42*)—DISBARMENT—FRAUDULENT PRACTICES.

Where the evidence shows a persistent course of attempted fraud on the court and as to creditors of one of the parties in every step of which the respondent, an attorney, participated, the result of which was that certain persons by fraudulent conveyances were enabled by respondent's aid to postpone for more than a year the payment of a just claim to which there was no shadow of a defense, respondent is guilty of such unprofessional conduct as warrants his suspension from practice for two years.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

Proceedings against Elias B. Goodman, an attorney, for unprofessional conduct. Respondent suspended from practice for two years.

See, also, 114 App. Div. 914, 100 N. Y. Supp. 1118.

Argued before INGRAHAM, CLARKE, HOUGHTON, SCOTT, and McLAUGHLIN, JJ.

---

*For other cases see same topic &·§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. · The respondent was charged by the association of the bar with unprofessional conduct. The charges and respondent's answer thereto were referred to a referee who has heard the parties at length, and has taken a great quantity of evidence which he has reported to the court. Some of the witnesses called in support of the charges the referee has found to be unworthy of belief, and has rejected their evidence. In some respects that evidence accords better with the probabilities of the case than does the evidence which contradicts them, but, even if their evidence be wholly disregarded, the undisputed facts in the case sufficiently establish the respondent's lack of appreciation of the duty which members of an honorable profession owe to the profession, to the court, and to the community. The evidence shows a case of a persistent course of attempted fraud and chicanery designed to impede and prostrate the course of justice, in every step of which the respondent participated in one capacity or another.

On June 24, 1903, respondent appeared in the Essex Market City Magistrate's Court as counsel for one Joseph D. Samuelson, against whom a proceeding was pending on the relation of his wife, Leah Samuelson. · A bond was required to keep Samuelson out of jail, and respondent induced one Solomon Zimmerman to give the bond. It was arranged that Samuelson should secure Zimmerman by giving him a bill of lading for certain paint stuffs which Samuelson had shipped from California. Thereafter one Woodruff, the consignee of the goods, brought two actions against Samuelson and the Panama Railroad Company, the carrier, to recover possession of the goods covered by the bill of lading. The goods were reclaimed by Samuelson; the affidavits and notices of reclamation being verified before the respondent as notary public. Zimmerman and one Blewett signed the undertakings to the sheriff to make the reclamation effective and justified as sureties. The acknowledgments of the undertakings and the justification of the sureties were taken before respondent as notary public. A few days after this, a stipulation was entered into in the replevin suit by which Samuelson agreed to make weekly payments to Woodruff, and stipulated that in default of ·such payment Woodruff might enter judgment. This stipulation was acknowledged before respondent as notary. After a while Samuelson defaulted in his weekly payments, and on September 23, 1903, Woodruff entered judgment in the replevin action. Thereafter an action was ·brought on the replevin bond against Zimmerman and Blewett, the sureties. The latter appeared in the action by Bernard Chambers, the respondent's law partner. The complaint recited the matters of record leading up to the giving of the undertaking, the undertaking itself, recovery of judgment in the replevin suit, issue of execution and its return unsatisfied, all matters of record and all or nearly all within the personal knowledge of respondent. Answers were prepared which denied knowledge or information sufficient to form a belief as to every allegation in the complaint. The evidence does not leave it very clear who drew the answer, although by general consent the responsibility is attempted to ·be cast on a young law student, who with some reluctance and hesitation assumes the honor. The answers were re-

turned by the plaintiff's attorney for sufficient reasons, and the defendants' default taken. Several motions were made to open the defaults, on all of which respondent appeared as counsel, presenting affidavits of merits, and an affidavit, sworn to before himself as notary public, purporting to state reasons why the default should be opened. Whether or not respondent was responsible for drawing the answers, he must have known their contents when he moved to open the defaults, and he then knew that all of the allegations in the complaint were true and that the answers were false. He thus deliberately put himself in the position of attempting to induce the court to accept false answers, with the sole object of impeding the plaintiff in the recovery of a judgment to which he was clearly entitled, and must ultimately secure. The motions to open the defaults were granted, but upon terms with which the defendants did not care to comply, and the judgments therefore stood. An execution proved fruitless, and supplementary proceedings were had. Zimmerman appears to have been a man of some substance. When he signed the reclamation bond, he owned two pieces of real estate in Ludlow street and one in East Eleventh street.

On August 3, 1903, four days after the stipulation had been entered into between Samuelson and Woodruff in the replevin suit, Zimmerman deeded to his wife the Ludlow street property, and this deed was put on record. Either on the same day, or a few days later, probably on the same day, Zimmerman's wife redeeded the property back to him. This deed was not put on record. Both of these deeds were drawn in respondent's office under his personal direction, were witnessed by him, and acknowledged before him as notary public. On August 15, 1903, Zimmerman deeded the East Eleventh street property to one Zelmanowitz, and this deed was put on record. On the same day and simultaneously Zelmanowitz redeeded the same property to Zimmerman. This deed was not put on record. Both of these deeds were prepared under respondent's direction, were witnessed by him, and acknowledged before him as notary public. There can be no doubt whatever that both of these transactions were fraudulent attempts on Zimmerman's part to put his property apparently out of his hands and out of reach of any judgment creditor, preserving, however, title in himself. It may be that we should not accept Zimmerman's testimony that the transactions were had at respondent's suggestion, but even so it is quite evident that respondent knew of their fraudulent character and purpose. After the failure of his efforts to collect the judgments against Zimmerman and Blewett, Woodruff, the judgment creditor, began an action in equity against Zimmerman and his wife to reach the Ludlow street property. Again, the defendants were represented by Chambers, respondent's partner, and again false answers were interposed denying knowledge or information sufficient to form a belief as to the record facts, which the attorneys certainly knew to be true, and which the defendant Zimmerman probably knew to be true. The action came on for trial before Mr. Justice McCall, and again respondent appeared as counsel for the defendants.

On the trial, relying upon the sham denials in the answers, respondent compelled the plaintiff's counsel to make formal proof of all the record facts. His statement that he admitted all these matters and

defended only upon the question of good faith in making the deed is not borne out by the minutes of the trial. Respondent also offered himself and was sworn as a witness testifying positively to the payment of a cash consideration, a matter as to which it now appears that he had no personal knowledge. The result of all these proceedings was that Zimmerman and Blewett were enabled by the respondent's active aid to postpone for more than a year the payment of a just claim, voluntarily undertaken and to which there never was a shadow of a defense. The respondent even now seems to be unaware that his conduct has been of a nature to justify criticism and censure. He seems to be impressed with the idea that, so long as an attorney keeps himself within the limits of the law, he may safely and justifiably seek to mislead the court and defeat the just claims of an opponent by attempting to uphold what he knows to be false statements and fraudulent acts on the part of his client. This utterly erroneous position is sought to be justified and defended by the relation between counsel and client. It is time that it should be understood that such an idea is erroneous and will not be tolerated. Laws are enacted and courts maintained for the administration of justice, not for its perversion, and all acts which have for their purpose the obstruction of the ends of justice are justly open to severe censure, and particularly when they are committed or connived at by a sworn officer of the law whose duty to his client requires him rather to discourage fraud than to assist in it. That the respondent has shown himself to be sadly lacking in his appreciation of the duties of his office there is no doubt whatever, and we deem it necessary, as well for his punishment, as for the admonition of others who may be tempted to act in like manner, that a substantial penalty should be inflicted. What that penalty should be is a subject to which we have given much consideration. The respondent was, when the acts above detailed occurred, a very young man, who had not long been a member of the bar. It does not appear that he had enjoyed for any considerable length of time any association with older lawyers from whose example and precept he might have acquired a more just realization of professional ethics. Under all the circumstances, we have concluded that a suspension from practice for two years will serve to impress upon respondent's mind, and upon the minds of others who may be similarly tempted, an understanding that practices such as respondent has been guilty of are contrary to the duties which every attorney assumes on admission to the bar, and will not be tolerated. If the evidence was entirely satisfactory that respondent actually advised Zimmerman to make the fraudulent transfer of his property to defeat the just claims of his creditors, we should be disposed to impose the extreme penalty of disbarment. Upon that question, however, we give respondent the benefit of the doubt resulting from Zimmerman's confessed untruthfulness on other matters.

The application is granted, and the respondent is suspended from practice for two years.